UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANDREW S. MCKINNON, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * Civil Action No. 18-cv-10695-IT |
| | * |
| NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration, | * |
| | * |
| Defendant. | * |

MEMORANDUM & ORDER
August 16, 2019

TALWANI, D.J.

I. Introduction

Plaintiff Andrew Stephanos McKinnon seeks reversal of the final decision by the Commissioner of the Social Security Administration denying his claim for disability insurance benefits. Compl. [#1]; Mot. Order Reversing Decision Comm'r [#14]. Defendant, Acting Commissioner of the Social Security Administration Nancy A. Berryhill, asks that this court affirm the decision of the Administrative Law Judge, made final by the Appeal Council's decision to deny review. Mot. Order Affirming Decision Comm'r [#16]. For the reasons below, the court DENIES McKinnon's Motion for Order Reversing the Decision of Commissioner [#14] and GRANTS Berryhill's Motion for Order Affirming Decision of Commissioner [#16].

II. Standard of Review

The district court has the power to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review is limited to determining whether the Administrative Law Judge ("ALJ") "used the proper legal standards and found facts upon the

1

proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). Findings of fact by the ALJ are conclusive when supported by substantial evidence, "but . . . not . . . when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). Substantial evidence is "more than a scintilla, less than a preponderance, and is such that a reasonable mind might accept it as adequate to support a conclusion." Rodriguez v. Berryhill, 323 F. Supp. 3d 232, 247 (D. Mass. 2018). A reviewing court must affirm a decision of the Commissioner "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the Commissioner's] conclusion." Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ evaluates whether an individual is disabled using the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520. At step one, the ALJ considers an individual's work activity; if the individual is engaging in "substantial gainful activity," the individual is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ looks at the medical severity of the individual's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If the individual does not have a "severe medically determinable physical or mental impairment" that meets the duration requirement under 20 C.F.R. § 404.1509, the individual is not disabled. Id. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to step three. At step three, the ALJ considers the medical severity and duration of an individual's impairments. An individual is disabled if his impairments meet or equal one of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Appendix 1"). 20 C.F.R. § 404.1520(a)(4)(iii). If an individual's impairments do not meet or equal an Appendix 1 listing criteria, the ALJ's analysis

proceeds. Prior to step four, the ALJ determines the individual's residual functional capacity ("RFC") in preparation for step four. 20 C.F.R. § 404.1520(a)(4).

The ALJ assesses the individual's RFC based on "all the relevant evidence in [the] case record." See 20 C.F.R. § 404.1545. At step four, the ALJ uses the RFC to consider whether an individual can perform his past relevant work; if so, the individual is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). Finally, at step five, the ALJ considers an individual's RFC and the individual's age, education, and work experience to determine if the individual can make an adjustment to other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(v); 20 C.F.R. § 404.1560(c). If the individual could adjust to such work, he is not disabled. 20 C.F.R. § 404.1520(a)(4)(v).

III. Factual Background

  A. *Medical Evidence*

McKinnon, who was 45 when he applied for disability benefits, has a history of depression, Lyme disease, memory loss, and arthritis. Consultative Examination Report by Dr. Mayers ("Mayers Report"), SSA Administrative Record of Social Security Proceedings ("Admin. Rec.") at 524, ECF #13-9 at 99; Brigham & Women's Hospital Records, Dr. Pariser ("Pariser Records"), Admin. Rec. at 543, ECF #13-10 at 14. While there are decades of medical records in the Administrative Record, the question before the court concerns McKinnon's status as of July 1, 2013, the date McKinnon asserts he became disabled. Application for Disability Insurance Benefits, Admin. Rec. 251, ECF #13-5 at 12. His earlier medical status is referenced here as background.

1. *Records from Tinatin Chabrashvili, M.D.*

On May 13, 2013, McKinnon had a follow-up visit with Dr. Tinatin Chabrashvili, M.D., with whom McKinnon had consulted for cognitive complaints such as memory decline and poor concentration. Tufts Medical Center, Medical Records, Admin. Rec. at 403-05, ECF #13-8 at 13-15. According to Dr. Chabrashvili, an MRI conducted in January 2013 was "unremarkable," and "neurophysiological testing" done in April 2013 was normal. Id., Admin. Rec. at 403, ECF #13-8 at 13. Dr. Chabrashvili acknowledged that McKinnon had a "documented worsening of cognition during Lyme disease," but that at the follow-up visit, McKinnon "reports some improvement of his depression, sleeps better, [and] feels more happy and energetic." Id.

2. *Records from Kenneth Pariser, M.D.*

On July 9, 2013, McKinnon met with Kenneth Pariser, M.D., who had initially diagnosed him with Lyme disease in 2005. Pariser Records, Admin. Rec. at 536, 534, ECF #13-10 at 7, 14. Dr. Pariser wrote that McKinnon's hand, neck, and foot pain was "better" and reacting well to medication, and that his joint exam was "remarkable for pain with full abduction of the right shoulder against resistance." Id., Admin. Rec. at 536, ECF #13-10 at 7. McKinnon saw Dr. Pariser again on August 14, 2014, and the doctor noted McKinnon's symptoms were consistent with "mild reactive arthritis now in remission." Id., Admin. Rec. at 535, ECF #13-10 at 6. At both visits, Dr. Pariser noted that McKinnon had "persistent complaints of difficulty concentrating with no change." Id., Admin. Rec. at 535-36, ECF #13-10 at 6-7. On August 27, 2015, McKinnon returned to Dr. Pariser for a follow-up appointment, where the doctor reiterated that McKinnon's symptoms were consistent with "mild reactive arthritis now in remission." Id., Admin. Rec. at 565-66, ECF #13-10 at 36-37. In February 2016, McKinnon requested an alternative anti-inflammatory medication from Dr. Pariser, as his current medication made him

tired, but by August 2016 he returned to the original medication because it most effectively addressed his hand pain. Id., Admin. Rec. at 572, 581, ECF #13-10 at 43, 52. In his August 2016 notes, Dr. Pariser described McKinnon's arthritis as "mild and subtle." Id., Admin. Rec. at 582, ECF #13-10 at 53.

### 3. Letter from Robert O. Sills, Ph.D., BCD

In March of 2014, McKinnon began seeing Dr. Robert O. Sills, Ph.D., BCD, for voluntary outpatient psychotherapy relating to McKinnon's depression, anxiety, poor health, and social isolation. Letter from Dr. Robert O. Sills, Admin. Rec. at 534, ECF #13-10 at 5. In March 2015, Dr. Sills noted that McKinnon has "shown improvement over the course of this past year." Id.

### 4. Records from Stanley M. Cole, M.D.

Dr. Sills referred McKinnon to Dr. Stanley M. Cole, M.D., a board-certified psychiatrist and neurologist, who first saw McKinnon on November 2, 2014. Narrative Report on Andrew S. McKinnon ("Narrative Report"), Admin. Rec. at 690, ECF #13-10 at 161. Dr. Cole has seen McKinnon twenty-one times for at least forty-five minutes each. Id. Dr. Cole completed a Mental Residual Functional Capacity Assessment ("MRFC") on April 20, 2017, noting that McKinnon was "markedly limited" in three areas: the ability (1) to understand and remember detailed instructions; (2) to maintain attention and concentration for extended periods; (3) and to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. MRFC, Admin. Rec. at 687, ECF #13-10 at 158.

### 5. Report from Michael Larson, D.O.

On December 3, 2014, Dr. Michael Larson, D.O., completed a psychiatric disorder report where he described McKinnon's diagnoses of generalized anxiety disorder, Lyme disease,

5

chronic fatigue, and "significant socioeconomic stress." Psychiatric Disorder Report, Admin. Rec. at 443, ECF #13-9 at 18. Dr. Larson, who had been treating McKinnon since 2010, also noted that McKinnon "needs a specific spreadsheet to remind him of basic activities," and that he "forgets appointments, medication refills and details." Id. Additionally, Dr. Larson opined that McKinnon was "struggling to manage [activities of daily living]" and that he was "unable to secure employment or even look for employment." Id.

6. *Report from Theodore Stronach, Ph.D.*

McKinnon was examined by Dr. Theodore Stronach, Ph.D., on January 26, 2015. Consultative Examination Report by Dr. Stronach ("Stronach Report"), Admin. Rec. at 501, ECF #13-9 at 76. Dr. Stronach performed various assessments of McKinnon's memory and concentration, and found McKinnon to be within the average to high-average range on all tests. Id., Admin. Rec. at 506, ECF #13-9 at 81. Dr. Stronach noted in his diagnostic impressions that McKinnon has an Adjustment Disorder with Depressed Mood and Anxiety, as well as Major Depression, but concluded that McKinnon had at least an average ability to concentrate and remember, based on objective testing. Id.

7. *Report from Felix Mayers, M.D.*

McKinnon was also examined by Dr. Felix Mayers, M.D., in October of 2015. Mayers Report, Admin. Rec. at 524, ECF #13-9 at 99. Dr. Mayers reported that McKinnon's "gait is normal" and he has "no significant sensory or motor deficits," and that he can "shower and dress unaided." Id., Admin. Rec. at 526, ECF #13-9 at 101. McKinnon told Dr. Mayers that he would "probably have some difficulty following instructions" in a work environment due to his memory lapses. Id.

### B. ALJ Hearing Testimony

McKinnon's first hearing before an ALJ commenced on January 24, 2017, but was promptly adjourned to obtain a treating source statement. Transcript of Oral Hearing I, Admin. Rec. at 35-40, ECF #13-2 at 36-41. A second hearing was held on May 2, 2017. Transcript of Oral Hearing II ("Tr."), Admin. Rec. at 41-75, ECF #13-2 at 42-76. McKinnon and a vocational expert provided the testimony at the second hearing.

McKinnon testified that he holds a paralegal certificate and previously held a broker's license. Tr., Admin. Rec. at 45-46, ECF #13-2 at 46-47. He currently rents space in a shared woodworking shop, where he works "four or five times a week." Tr., Admin. Rec. at 46-48, 61, ECF #13-2 at 47-49, 62. McKinnon reports that he can get dressed daily, do chores, drive to his woodshop, and walk about "a quarter mile" before stopping due to knee pain. Tr., Admin. Rec. at 56-59, ECF #13-2 at 57-60. McKinnon also reports memory loss, a lack of sexual desire, and "not much desire for life." Tr., Admin. Rec. at 56, ECF #13-2 at 57. McKinnon eats three times a day but "can't put weight on" and reports that he has recurrent pain in his neck, knees, left ankle, right shoulder, and hands. Tr., Admin Rec. at 65-68, ECF #13-2 at 66-69.

Socially, McKinnon has no friends and does not belong to any clubs or organizations, but has a girlfriend with whom he spends time in the evenings. Tr., Admin Rec. at 57-58, 61, ECF #13-2 at 58-59, 62. He lives with the son of his landlord in an apartment, and feeds and walks his dog daily. Tr., Admin Rec. at 58-60, ECF #13-2 at 59-61. McKinnon has been on probation for three years and sees his probation officer every two weeks. Tr., Admin. Rec. at 64, ECF #13-2 at 65. While McKinnon is able to watch TV, he reports that he "lose[s] track of what's going on" if he watches for longer than an hour. Tr., Admin. Rec. at 61-62, ECF #13-2 at 62-63. McKinnon reports that he has periods of "two or three weeks" where he has to take "two, three naps

7

throughout the day just to get through it." Tr., Admin. Rec. at 68, ECF #13-2 at 69. He reports further that during these periods, he is unable to focus for more than a half hour at once. Id.

Renee Jubrey, a vocational expert, also testified at the hearing. Tr., Admin. Rec. at 71, ECF #13-2 at 72. On questioning by the ALJ, Ms. Jubrey stated that a person of McKinnon's age, education, and experience, able to perform at medium levels, with limitations to foot control, overhead reaching, extreme cold, and who is only able to do "simple, routine, repetitive tasks," would not be able to perform McKinnon's past relevant work as a real estate agent. Tr., Admin. Rec. at 72, ECF #13-2 at 73. Ms. Jubrey further testified that a person with McKinnon's limitations would be able to perform work as a food service worker in a hospital, as a sandwich maker, or as a hospital cleaner. Id. When asked by the ALJ if there are any jobs where a person would be able to be "off task six hours per workday over a two-week period every day," Ms. Jubrey said no. Tr., Admin. Rec. at 74, ECF #13-2 at 75.

IV. Analysis

To qualify for disability insurance benefits, an individual must prove that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Under the five-step sequential evaluation process, discussed *supra*, the ALJ found that: (1) McKinnon had not been doing any substantial gainful activity since July 1, 2013, (2) McKinnon had severe impairments in the form of "depression, anxiety, arthritis with joint dysfunction, and Lyme's disease together with the residuals thereof," (3) McKinnon's impairments did not meet or equal a listing impairment in Appendix 1, (4) McKinnon was unable to perform past relevant work as a real estate agent, and (5) McKinnon was able to adjust to

8

other work in the national economy. 20 C.F.R. § 404.1520(a)(4); ALJ Hr'g Op., Admin. Rec. at 23, ECF #13-2 at 24. The parties do not dispute the ALJ's conclusions at steps one, two, or four.

McKinnon argues that the ALJ improperly valued the medical opinions and records in his case by giving "little weight" to the evidence from McKinnon's treating physicians (Drs. Cole and Larson) and "great" or "significant" weight to the evidence from non-treating or non-examining medical consultants (Drs. Stronach and Mayers). Pl.'s Mem. in Support of Mot. for Order Reversing Comm'r's Decision ("Pl.'s Mem.") at 14 [#15]; ALJ Hr'g Op., Admin. Rec. at 21, ECF #13-2 at 22. McKinnon further argues that, because the ALJ improperly valued evidence, the ALJ's determinations at steps three and five were not supported by substantial evidence. Pl.'s Mem. at 14 [#15].

Because the court finds that the ALJ's determinations are supported by substantial evidence, the court DENIES McKinnon's Motion for Order Reversing the Decision of Commissioner [#14] and GRANTS Defendant's Motion for Order Affirming Decision of Commissioner [#16].

    A. *Valuation of Evidence*

As McKinnon's application was filed prior to March 27, 2017, 20 C.F.R. § 404.1527 governs how the ALJ should evaluate medical opinion evidence on the record. Application for Disability Insurance Benefits, Admin. Rec. at 251, ECF #13-5 at 12. First, the ALJ properly disregarded ultimate conclusions that would direct a determination of disability under 20 C.F.R. § 404.1527(d),[1] such as Dr. Cole's conclusion that McKinnon was "disabled by the criteria of the

---

[1] The ALJ "will not give any special significance to the source of an opinion on issues reserved to the Commissioner . . . ." 20 C.F.R. § 404.1527(d)(3). Issues reserved to the Commissioner include opinions that an individual is disabled, id. at (d)(1), whether an individual's impairments meet or equal a listing criteria in Appendix 1, an individual's RFC, or the application of vocational factors. Id. at (d)(2).

Social Security Administration." Narrative Report, Admin. Rec. at 694, ECF #13-10 at 165; ALJ Hr'g Op., Admin. Rec. at 21, ECF #13-2 at 22.

When deciding what weight to give a medical opinion, the ALJ considers the (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c). While the ALJ is not required to discuss each factor, Simumba v. Colvin, No. CIV.A. 12-30180-DJC, 2014 WL 1032609, at *7 (D. Mass. Mar. 17, 2014), Conte v. McMahon, 472 F. Supp. 2d 39, 48 (D. Mass. 2007), the ALJ must "always give good reasons" in a decision for the weight given to a treating source's medical opinion, 20 C.F.R. § 404.1527(c)(2), meaning "specific reasons that will allow subsequent reviewers to know the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Simumba, 2014 WL 1032609, at *7.

The court finds that the ALJ gave "good reasons" for not giving controlling weight to the reports of the treating physicians, Drs. Larson and Cole. See ALJ Hr'g Op., Admin. Rec. at 21, ECF #13-2 at 22. The ALJ determined that the reports of Drs. Larson and Cole were not consistent with the record as a whole, and also concluded that these reports were also less supportable than other evidence on the record. See Conte, 472 F. Supp. 2d at 48 (finding no legal error where the ALJ "stress[ed] one factor over others"). Therefore, the court finds that the ALJ properly utilized the statutory framework factors in determining what weight to give the medical evidence on record. Shaw v. Sec'y of Health & Human Servs., 25 F.3d 1037, *4 (1st Cir. 1994) (per curiam) (unpublished table decision) (declining to reweigh evidence using § 404.1527 factors on appeal); Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981) (stating the "resolution of conflicts in the evidence" is reserved to the ALJ).

*1. Consistency*

The ALJ gave "little weight" to Dr. Larson and Dr. Cole's opinions because the ALJ found these reports to be inconsistent with the other evidence on the record. 20 C.F.R. § 404.1527(c)(4); see ALJ Hr'g Op., Admin. Rec. at 21, ECF #13-2 at 22. An ALJ "may reject a treating physician's opinion as controlling if it is inconsistent with other substantial evidence in the record, even if that evidence consists of reports from non-treating doctors." Castro v. Barnhart, 198 F. Supp. 2d 47, 54 (D. Mass. 2002); see 20 C.F.R. § 404.1527(c)(2). The ALJ noted that "[t]he record as a whole as evidenced by [McKinnon's] activities of daily living supports a higher level of functioning" than Drs. Larson and Cole reported, citing McKinnon's ability to drive, go to his workshop, follow-up with his probation officer, and visit his girlfriend, as well as follow television programming and handle his own finances. ALJ Hr'g Op., Admin. Rec. at 21, ECF #13-2 at 22; see Tr., Admin. Rec. at 58-59, 61, ECF #13-2 at 59-60, 62.

Other evidence also supports the ALJ's determination that Drs. Larson and Cole's opinions were inconsistent with the record. See Quigley v. Barnhart, 224 F. Supp. 2d 357, 369 (D. Mass. 2002) (There is a presumption that the ALJ has "considered all of the evidence" in a given case, and there is "no explicit requirement that the ALJ make findings regarding every piece of evidence that is entitled to weight."). Specifically, Dr. Stronach assessed McKinnon as average or above average on tests of memory and visual motor functioning, and stated that McKinnon has a higher level of functioning than he reported. Stronach Report, Admin. Rec. at 504-06, ECF #13-9 at 79-81. As McKinnon's self-reports formed the basis for many of the conclusions of Drs. Larson and Cole, the doctors' reports of McKinnon's functioning were also inconsistent with the objective testing done by Dr. Stronach. Id. Additionally, other medical

evidence, such as "a lack of clear cut inflammation in his blood tests," suggests an improved condition for his arthritis. See Pariser Records, Admin. Rec. at 582, ECF #13-10 at 53.

    2. *Supportability*

In assessing the reports of treating physicians, the ALJ may conclude that reports are less supportable when the physicians "relied excessively on claimant's subjective complaints, rather than on objective medical findings." Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam). Because the record contained evidence based on objective data that supported a greater functioning than reports by McKinnon's treating physicians, the ALJ did not commit a legal error by giving McKinnon's treating physicians – based primarily on McKinnon's self-reporting of his symptoms – less weight than reports by non-treating physicians based (at least in part) on objective test data. See 20 C.F.R. § 404.1527(c) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."); Rodriguez Pagan, 819 F.2d at 3.

As the ALJ relied on the proper statutory framework when making his determinations, the court finds that the ALJ did not commit legal error in his valuation of the medical opinion evidence on record. "[W]here the facts permit diverse inferences, we will affirm . . . even if we might have reached a different result." Shaw, 25 F.3d 1037, *4.

    B. *Step 3 Determination*

At step three, the ALJ reviewed the "entire record" to determine that McKinnon's impairments, though severe, were not of a severity or duration to meet or equal the listing levels in Appendix 1 for 1.02A or 1.02B (major dysfunction of a joint), 14.09 (inflammatory arthritis), 12.04 (depressive and related disorders), or 12.06 (anxiety and obsessive-compulsive disorders).

ALJ Hr'g Op., Admin. Rec. at 17-18, ECF #13-2 at 18-19. McKinnon argues that, because the ALJ improperly weighed the evidence, the ALJ's determination at step three of the evaluation process was not supported by substantial evidence. Pl.'s Mem. at 14-15 [#15]. However, as discussed above, the ALJ did not err in giving less weight to the reports of McKinnon's treating physicians. Thus, the court considers whether the ALJ's determinations at step three were supported by the proper quantum of evidence, and finds they were.

### 1. *Depression, Anxiety, & Lyme Disease*

With respect to the listings of 12.04 and 12.06, the ALJ focused on the criteria for paragraphs B (extreme or marked limitations) and C (serious and persistent mental disorders) of the listing criteria. 20 C.F.R. § 404, Part P, Appendix 1, 12.00(E), (G). Here, the ALJ relied upon the mental assessment and memory testing done by Dr. Stronach, as well as McKinnon's testimony about his supportive relationship with his family and his girlfriend, the daily care he provides for his dog, and his ability to keep appointments with his probation officer. ALJ Hr'g Op., Admin. Rec. at 18-19, ECF #13-2 at 19-20. McKinnon claims that Dr. Cole's MRFC report should be given controlling weight here, as it concluded McKinnon had extreme or marked limitations in specific areas. However, the ALJ has the statutory authority to make final decisions about meeting or equaling Appendix 1 impairments, and as discussed *supra*, the ALJ did not err in his valuation of the evidence. See 20 C.F.R. § 404.1527(d). Accordingly, the court finds that the ALJ had substantial evidence to support his determination that McKinnon's depression, anxiety, and Lyme disease, though severe, did not meet or equal the listing requirements such that they are *per se* disabling.

## 2. Arthritis with Joint Dysfunction

In determining that McKinnon's impairments did not meet the criteria for 1.02A and 1.02B, which relate to musculoskeletal impairments, and 14.09, inflammatory arthritis, the ALJ pointed to evidence on the record that McKinnon is not unable to ambulate[2] or perform fine and gross movements[3] effectively, as defined by the Social Security Act. 20 C.F.R. § 404, Part P, Appendix 1, 1.00(B)(2); ALJ Hr'g Op., Admin. Rec. at 17, ECF #13-2 at 18. Specifically, the ALJ notes that McKinnon testified that he does not use an ambulatory device such as a walker, and that he can use public transportation and walk more than a block without assistance. ALJ Hr'g Op., Admin Rec. at 17-18, ECF #13-2 at 18-19; see also Mayers Report, Admin Rec. at 526, ECF #13-9 at 101 (stating McKinnon has "no significant sensory or motor deficits").[4]

Based on these facts, the ALJ's determination at step three that McKinnon's severe impairments did not meet or equal any impairment in Appendix 1 was supported by substantial

---

[2] "Unable to ambulate effectively" is defined as "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R. § 404, Part P, Appendix 1, 1.00(B)(2)(b)(1) (internal citations omitted).

[3] "Inability to perform fine and gross movements" is defined as "an extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living. Therefore, examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene . . . ." 20 C.F.R. § 404, Part P, Appendix 1, 1.00(B)(2)(c).

[4] McKinnon's argument regarding the weighing of medical opinions and evidence applies here, but, as previously discussed, there was no legal error in giving the Mayers report greater weight than that of McKinnon's treating physicians.

evidence. See Rodriguez, 323 F. Supp. 3d 232, 247 (substantial evidence is "such that a reasonable mind might accept it as adequate to support a conclusion").[5]

### C. Residual Functional Capacity

In determining McKinnon's RFC level, the ALJ found that McKinnon had severe impairments, but not to the degree that McKinnon represented, and "not so limiting that [McKinnon] could not perform" at a medium level. ALJ Hr'g Op., Admin. Rec. at 20, ECF #13-2 at 21. The ALJ offered substantial evidence for his determination that McKinnon's "alleged limitations . . . are inconsistent with some of his own actions." Id.

The ALJ considered McKinnon's symptoms pursuant to the two-step process required by 20 C.F.R. § 404.1529, and found (1) McKinnon's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but (2) McKinnon's statements about the intensity, persistence, and limiting effects of the symptoms were not consistent with the medical evidence and other evidence on record, as discussed *supra*. ALJ Hr'g Op., Admin. Rec. at 21, ECF #13-2 at 22. "Credibility determinations, while the sole responsibility of the ALJ, 'must be supported by substantial evidence[,] and the ALJ must make specific findings as to the relevant evidence he considered in determining to disbelieve'" McKinnon's characterization of his limitations. Carr v. Astrue, No. 09CV10502-NG, 2010 WL 3895189, at *6 (D. Mass. Sept. 30, 2010) (quoting Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986)).

---

[5] McKinnon raises in his supporting memo that he "meets the criteria for disability based on Listing Section 11.14 Peripheral neuropathy, Part B," which is not discussed in the ALJ decision. See Pl.'s Mem. at 13 [#15]. McKinnon does not offer supporting evidence for this claim in his memorandum other than conclusory statements regarding the elements of the listing impairment. Id. This impairment requires a "[m]arked limitation in physical functioning," and an individual may meet this criteria when he has "persistent or intermittent symptoms that affect [his] abilities to independently initiate, sustain, and complete work-related activities, such as standing, balancing, walking, using both upper extremities for fine and gross movements, or results in limitations in using one upper and one lower extremity." 20 C.F.R. § 404, Part P, Appendix 1, 11.00G(2)(a).

15

Here, the ALJ properly relied on factors set forth in 20 C.F.R. § 404.1529(c) to determine the weight to give McKinnon's self-reported and subjective symptoms. See 20 C.F.R. § 404.1529(c)(3)(i)-(vii) (setting forth factors that can help with the task of evaluating subjective symptoms);[6] ALJ Hr'g Op., Admin. Rec. at 20-21, ECF #13-2 at 21-22; Alberts v. Astrue, No. CIV.A. 11-11139-DJC, 2013 WL 1331110, at *13 (D. Mass. Mar. 29, 2013) (finding the ALJ considered each 20 C.F.R. § 404.1529(c) factor even if he "did not explicitly map each piece of evidence he cited into one of the aforementioned seven factors"). Thus, while the ALJ acknowledged that McKinnon has reported memory loss and problems with concentration, the ALJ found that other evidence, such as objective testing done by Dr. Stronach that showed McKinnon fell within above average or average ranges on testing for these cognitive capacities, weighed against finding a lower RFC. ALJ Hr'g Op., Admin. Rec. at 21, ECF #13-2 at 22; Stronach Report, Admin. Rec. at 506, ECF #13-9 at 81. The ALJ also noted that McKinnon's musculoskeletal exam was "unremarkable," and that McKinnon did not have any "significant sensory or motor deficits." ALJ Hr'g Op., Admin. Rec. at 21, ECF #13-2 at 22; see Mayers Report, Admin. Rec. at 526, ECF #13-9 at 101. Additionally, the ALJ concludes that McKinnon's treatment plan was of a "routine or conservative nature," and noted that McKinnon had "not required psychiatric hospitalization" and some of his "medical visits were specific for

---

[6] "Factors relevant to your symptoms, such as pain, which we will consider include: (i) [y]our daily activities; (ii) [t]he location, duration, frequency, and intensity of your pain or other symptoms; (iii) [p]recipitating and aggravating factors; (iv) [t]he type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) [t]reatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) [a]ny measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) [o]ther factors concerning your functional limitations and restrictions due to pain or other symptoms."

16

establishing disability and not for treatment." ALJ Hr'g Op., Admin. Rec. at 20, ECF #13-2 at 21; see 20 C.F.R. § 404.1529(c)(iv)-(v).

Finally, McKinnon asserts that the ALJ's RFC assessment improperly failed to consider the variability of his symptoms, and that while McKinnon may sometimes be able to perform work at a moderate level, he does not have an ability to perform such work on a "consistent" basis due to the degree of his impairments. Pl.'s Mem. at 19 [#15]. While self-reported symptoms are an important way of identifying an individual's abilities, in this case, substantial evidence on the record, including physician reports and McKinnon's own testimony about his ability to perform daily tasks, supports the ALJ's finding that McKinnon is able to perform at a moderate level. See Ward, 211 F.3d 652, 655 ("Judicial review . . . is limited to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence.").

Because the ALJ's determination of McKinnon's RFC was made upon a proper consideration of McKinnon's credibility and 20 C.F.R. § 404.1529(c) factors, and is supported by substantial evidence, his evaluation of McKinnon's disability status at step five should be affirmed.

V.   Conclusion

The court hereby DENIES McKinnon's Motion for Order Reversing the Decision of Commissioner [#14] and GRANTS Defendant's Motion for Order Affirming Decision of Commissioner [#16].

IT IS SO ORDERED.

Date: August 16, 2019                              /s/ Indira Talwani_____
                                                   United States District Judge